United States District Court
Southern District of Texas
**ENTERED**
December 29, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RICKEY AND KIMBERLY ENCALADE, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. H-24-4310 |
| STATE FARM LLOYDS, | § § § | |
| Defendant. | § § § § | |

**MEMORANDUM AND OPINION**

This is an insurance dispute over wind and hail damage to a home. Rickey and Kimberly Encalade owned a homeowners' insurance policy issued by State Farm Lloyds. After the Encalades gave State Farm notice of damage caused by the storm, State Farm Lloyds investigated. Its adjuster concluded that the home had sustained no covered damage. The Encalades disagreed and invoked appraisal under the policy. An umpire adjudicated the dispute and found that the Encalades' home had suffered approximately $50,000 in storm damage. State Farm declined to pay, maintaining that the damage was outside the policy coverage. The Encalades sued for breach of the insurance policy and moved for summary judgment on their breach-of-contract claim, Texas Prompt Payment of Claims Act claim, and bad-faith claim. They also moved for a declaratory judgment that the appraisal award binds the parties.

Based on the pleadings, the motion, the record, and the applicable law, the court grants the Encalades' motion for declaratory judgment but denies their motion for summary judgment. The reasons for these rulings are set out below.

**I.     Background**

Rickey and Kimberly Encalade owned a homeowners' insurance policy issued by State Farm Lloyds with effective dates from January 31, 2022, to January 31, 2023. (Docket Entry No. 1-2 at 2). The policy covered wind and hailstorm damage. (*Id.*).

The Encalades allege that their property sustained extensive damage from a wind and hail storm. State Farm assigned a date of loss of January 7, 2023. (Docket Entry No. 12 at 3). On January 12, 2023, the Encalades filed a claim for damage from the storm. (*Id.*). On January 24, 2023, a State Farm claims specialist informed the Encalades that an inspection with the public adjuster found no covered damage. (Docket Entry 12-2 at 1). Dissatisfied with the coverage decision, the Encalades hired another public adjuster, Morgan Elite Specialist Services, LLC, to assist with their claim. (Docket Entry No. 1-2 at 3). In July 2023, State Farm sent an engineer, Joseph Presswood, to again assess the roof, confer with the Encalades' public adjuster, and determine if the roof was damaged by wind or hail. (Docket Entry No. 12-6 at 2). Presswood submitted a report to State Farm finding no covered damage. (*Id.* at 4).

In January 2024, a year after the first claim denial, the Encalades invoked the appraisal clause in the policy. (Docket Entry No. 11-2 at 66). The policy permitted each party to select an independent appraiser, who would jointly determine the losses and submit a binding report to the parties. (Docket Entry No. 12-3 at 1–2). The Encalades' appraiser, Kevin Funsch, and State Farm's appraiser, Ryan Samson, failed to agree. (Docket Entry No. 11 at 3). Under the policy terms, the Encalades and State Farm agreed on an umpire, Allen Burns, to adjudicate the differences between the two appraisers' reports. (*Id.*).

On May 24, 2024, Burns and Funsch signed an appraisal award that found $50,513.04 in replacement costs and $37,370.99 as the actual cash value. (Docket Entry No. 12-4 at 1). On July

10, 2024, State Farm informed the Encalades that it had received the $50,513.04 appraisal award|. (Docket Entry No. 12-5 at 1).  State Farm declined to cover those damages because its investigation had found no property damage from wind or hail.  Instead, according to State Farm, the property condition was due to wear, tear, deterioration, or mechanical damage.  (*Id.*).  State Farm reiterated its denial of the claim.  (*Id.*).  The Encalades submitted a post-appraisal notice for settlement in the amount of the appraisal award.  (Docket Entry No. 1-2 at 4).  State Farm again denied the claim.

The parties do not dispute that appraisal awards are binding.  They agree that the appraisal sets the value of the loss, which is binding.  The issue is whether an appraiser's assessment of causation is binding.

The Encalades argue that under Texas law, appraisers may determine whether damage was caused by a particular event or a pre-existing condition.  (Docket Entry No. 11 at 13).  They argue that this determination is binding.  (*Id.*).  The Encalades provide testimony from both Funsch and Burns that their appraisal award included only damage caused by hail and wind and excluded damage due to wear and tear.  (Docket Entry No. 11-2 at 77, 97).  The Encalades assert that the appraisers' finding that the damage was caused by hail and wind, not wear and tear, is binding on the parties.  (Docket Entry No. 11 at 13).

State Farm disagrees.  It argues that appraisers' conclusions as to causation are not binding if they are disputed.  (Docket Entry No. 12 at 12).  State Farm argues that there are many potential causes of the claimed damage—including wear and tear "and a post-wind hail damage for which Plaintiffs made no separate claim."  (*Id.* at 10).  State Farm argues that appraisal cannot replace litigation when, as here, the cause of the damage is still disputed.  (*Id.* at 11).

The Encalades move for summary judgment on their claims for breach of contract, violation of the Texas Prompt Payment of Claim Act, and violation of the Deceptive Trade

3

Practices Act. (Docket Entry No. 11). The Encalades move for a declaratory judgment that the appraisal award is valid and that State Farm's interpretation is invalid and against public policy. (*Id.*).

## II.     The Legal Standard

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). An issue of fact is genuine if a reasonable trier of fact could return judgment for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a fact is material if it "might affect the outcome of the suit under the governing law" and is not "irrelevant or unnecessary." *Id.* "The court must construe all the evidence and draw all reasonable inferences from the evidence in the light most favorable to the non-moving party." *Maldonado v. Harris County*, 2025 WL 2443389, at *2 (S.D. Tex. Aug. 25, 2025) (citing *Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988)). "If the non-moving party prevails as a matter of law after so construing the record, or if reasonable minds could differ on the import of the evidence presented, the court must deny the motion for summary judgment." *Id.* (citing *Sanchez v. Young County*, 956 F.3d 785, 791 (5th Cir. 2020)).

## III.    Analysis

The Encalades moved for partial summary judgment on their breach-of-contract, Texas Prompt Payment of Claim Act, and bad-faith claims. (Docket Entry No. 11). They also move for a declaratory judgment that the appraisal award is binding on the parties. (*See id.*). The Encalades' motion for declaratory judgment is granted. Their motion for summary judgment is denied.

A.     **Breach of Contract**

The Encalades ask "that this Court enter judgment in Plaintiffs' favor and declare that the appraisal award is owed under the terms of the Policy and that Defendant's failure to timely pay the appraisal award was a breach of the Policy." (Docket Entry No. 11 at 1). There are two requests: first, for a declaratory judgment that the appraisal amount is owed; and second, for summary judgment on their claim that the failure to pay the appraisal award was a breach of contract. The court grants first, but not the second, request.

To recover on a breach of contract claim, the insured must prove the following elements: (1) the existence of a valid contract, (2) the insured performed or tendered performance, (3) the insurer breached the contract, and (4) the insured was damaged as a result of the breach. *Texas Windstorm Ins. Ass'n v. Dickinson Indep. Sch. Dist.*, 561 S.W.3d 263, 272 (Tex. App.—Houston [14th Dist.] 2018, pet. denied). "Texas insurance policies frequently include provisions specifying appraisal to resolve disputes about the amount of loss under the policy." *Glenbrook Patiohome, Owners Ass'n v. Lexington Ins. Co.*, 2011 WL 666517, at *4 (S.D. Tex. Feb. 14, 2011). "Appraisal clauses in property insurance policies in Texas provide a method to resolve disputes regarding the amount of loss for a covered claim." *United Neurology, P.A. v. Hartford Lloyd's Ins.*, 995 F. Supp. 2d 647, 648–49 (S.D. Tex. 2014). "Because courts seek to implement the intention of the parties as expressed in the language of a contract, it has long been the rule in Texas that appraisal awards made pursuant to the provisions of an insurance contract are binding and enforceable." *TMM Invs., Ltd. v. Ohio Cas. Ins. Co.*, 730 F.3d 466, 471–72 (5th Cir. 2013) (cleaned up).

"[A]n appraisal award, by itself, does not entitle either the insured or the insurer to judgment in its favor as to the insured's claim against the insurer for breach of contract." *Rodriguez v. State Farm Lloyds*, 2017 WL 7000563, at *2 (S.D. Tex. Mar. 8, 2017) (quoting

5

*Security Nat. Ins. Co. v. Waloon Inv., Inc.*, 384 S.W.3d 901, 905 (Tex. App.—Houston [14th Dist.] 2012, no pet.)). First, an appraisal does not determine every element of a breach claim. "The effect of an appraisal provision is to estop one party from contesting the issue of damages in a suit on the insurance contract, leaving [open] the question of liability for the court." *Lundstrom v. United Servs. Auto. Ass'n-CIC*, 192 S.W.3d 78, 87 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). Second, a party may be able to "set aside" an appraisal award if "the contesting party shows the award was (1) made without authority; (2) the result of fraud, accident, or mistake; or (3) not in substantial compliance with the insurance policy." *Great Am. Ins. Co. of New York v. Midland Chin Baptist Church, Inc.*, 2021 WL 9860723, at *3 (W.D. Tex. Nov. 21, 2021). Although "[e]very reasonable presumption will be indulged to sustain an appraisal award," *TMM Invs.*, 730 F.3d at 472, the appraisal provision allows the parties to contest an award in court as beyond the scope of the policy.

Texas courts have wrestled with whether, under insurance policies, appraisers have the authority to determine the cause of damage. *See, e.g.*, *Wells v. American States Preferred Insurance Co.*, 919 S.W.2d 679, 683–85 (Tex. App.—Dallas 1996, writ denied); *Lundstrom*, 192 S.W.3d at 87–89. The key Texas case is *State Farm Lloyds v. Johnson*, 290 S.W.3d 886 (Tex. 2009). *See TMM Invs.,* 730 F.3d at 473–74 ("That case, *State Farm Lloyds v. Johnson*, does indeed provide the controlling law on the issue of the scope of the appraisal panel's authority.").

Under Texas law, "the scope of appraisal is damages, not liability." *Johnson*, 290 S.W.3d at 890. "Causation relates to both liability and damages because it is the connection between them." *Id.* at 891–92. Although, "[i]n the abstract, it is hard to say whether causation is more a question of liability or damages," in practice, "causation usually falls into one category or the other." *Id.* at 892. Whether a causation determination exceeds an appraiser's authority requires a

6

fact-intensive inquiry into "the nature of the damage, the possible causes, the parties' dispute, and the structure of the appraisal award." *Id.* at 893.

*Johnson* allows appraisers to assess what amount of damage were caused by a specific event, which necessitates some causation determination. But *Johnson* does not authorize appraisers to allocate a loss amount from a single event between different causes. "When different causes are alleged for a single injury to property, causation is a liability question for the courts." *Id.* at 892. But appraisers can—and must—"allocate damages between covered and excluded perils" by "separating loss due to a covered event from a property's pre-existing condition." *Id.* "Any appraisal necessarily includes some causation element, because setting the 'amount of loss' requires appraisers to decide between damages for which coverage is claimed from damages caused by everything else." *Id.* at 893.

"*Johnson* may be read to expand the powers of appraisers to make causation determinations." *Tippett v. Safeco Ins. Co. of Indiana*, 2020 WL 827143, at *10 (Tex. App.—Fort Worth Feb. 20, 2020, no pet.). "[W]hether the appraisers have gone beyond the damage questions entrusted to them will depend on the nature of the damage, the possible causes, the parties' dispute, and the structure of the appraisal award." *Johnson*, 290 S.W.3d at 893. The courts in this circuit are consistent in affirming that, under Texas law, "[a]ppraisal panels act within their authority when they determine whether damage was caused by a covered event or was the result of non-covered pre-existing conditions like wear and tear." *United Neurology*, 995 F. Supp. 2d at 657; *see, e.g.*, *MLCSV10 v. Stateside Enters., Inc.*, 866 F. Supp. 2d 691, 705 (S.D. Tex. 2012).

In sum, to prove that the appraisers acted within their authority, which would make their finding of loss binding, the Encalades must show that the appraisers "separat[ed] loss due to a

7

covered event from a property's pre-existing condition," rather than allocated loss for a "single injury" between "different causes." *Johnson*, 290 S.W.3d at 892.

The record shows that the appraisers did separate the loss due to a covered event—the storm—from loss due to the property's pre-existing condition. Kevin Funsch, one of the appraisers, found that "all of the damages included in the appraisal award and estimate were caused by a hail storm event at the property" and that other damages, "including wear and tear, were not part of the award." (Docket Entry No. 11-2 at 77). Allen Burns, the umpire, also found "that all of the damages included in the appraisal award and estimate were caused by a hail storm event at the property" and that other damages, "including wear and tear, were not part of the award." (*Id.* at 97). The appraisers' findings fall squarely within the rule that "appraisal panels" act "within their rights when they consider whether damage was caused by a particular event or was instead the result of non-covered pre-existing perils like wear and tear." *TMM Invs.*, 730 F.3d at 474.

*MLCSV10 v. Stateside Enterprises, Incorporated*, is instructive. In that case, the court held that an appraiser did not exceed his authority by determining causation because he considered both covered damage and pre-existing conditions. *See* 866 F. Supp. 2d at 704–05. The appraiser did not believe that Hurricane Ike, as opposed to wear and tear, caused the moisture damage because there was no penetration of the roof membrane. *See id.* at 704–05. Although the appraiser recognized that there could be other sources of moisture in a roof, he could not attribute the moisture he found to storm damage because there was no evidence of penetration. *Id.* The court held that the appraiser's assessment did not exceed the scope of his authority, reasoning that a contrary conclusion would mean that "appraisers can never allocate damages between covered and excluded perils . . . unless a roof is brand new." *Id.* at 705 (quoting *Johnson*, 290 S.W.3d at 892–

8

93). As in *Stateside*, the appraisers here focused on the distinction between covered events and pre-existing conditions, so that any "causation" opinion was within the scope of their authority.

State Farm urges a different conclusion, arguing that there are multiple possible causes for the Encalades' loss that require a court to allocate damages among them. (Docket Entry No. 12 at 10). State Farm argues that there was existing wear and tear damage in the Encalades' roof, which would preclude the appraisers from determining that the storm caused the damage. (*Id.*; Docket Entry No. 12-2 at 1). But, as discussed, *Johnson* stands for the opposite principle: separating damage caused by a covered event from wear and tear is the kind of question appraisers must determine. *See TMM Invs.,* 730 F.3d at 474; *Stateside Enters., Inc.*, 866 F. Supp. 2d at 704–05. The appraisers here did not exceed their authority by distinguishing between damage caused by wear and tear and covered damage caused by the storm.

State Farm argues in its motion that the other potential causes of the Encalades' losses include "excluded damages" and "post-wind hail damage." (Docket Entry No. 12 at 10). But State Farm offers no facts to support these other potential causes. Unsubstantiated assertions, conclusory allegations, improbable inferences, and unsupported speculations are not competent summary judgment evidence. *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994). "[S]uch allegations are insufficient, therefore, to defeat a motion for summary judgment." *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996) (per curiam).

In *Johnson*, the Texas Supreme Court held that the insurer could not create a factual dispute on causation because the record did not establish that "Johnson's roof was damaged by anything" other than hail. 290 S.W.3d at 891. "In State Farm's denial letter, its summary judgment motion, and even its briefs" before the Texas Supreme Court, there was "neither evidence nor even a hint about what else caused the damage." *Id.* The same is true here. State Farm's letter disputing the

9

appraisal award simply asserted that the damage to the "roof and gutters/downspouts were not caused by wind or hail." (Docket Entry No. 11-2 at 73). The letter asserts that the damages "were determined to be caused by wear, tear, deterioration, or to be mechanical in nature." (*Id.*). The letter reflects Presswood's evaluation of the property. (*See* Docket Entry No. 12-6). State Farm's bald assertions of alternative causes are insufficient to preclude summary judgment. A court cannot find a "causation dispute just because State Farm" claims that there is one. *Johnson*, 290 S.W.3d at 891. Appraisal may bind the parties to the amount of loss caused by covered events as opposed to wear and tear. Without evidence of an alternative cause or additional facts creating a causation dispute, State Farm cannot avoid the appraisal award on the ground that the appraisal exceeded the scope of the insurance policy.

State Farm also claims that "a fact issue exists" because it "has asserted that Plaintiffs' roof was either undamaged or damaged by uncovered circumstances." (Docket Entry No. 12 at 13). But State Farm is estopped from challenging the amount of the damages determined by the appraisal award. *See United Neurology*, 995 F. Supp. 3d at 649 n.2 ("The effect of an appraisal provision is to estop one party from contesting the issue of damages in a suit on the insurance contract . . . ."). State Farm cannot assert that there is no damage, because the binding appraisal has determined the amount of loss. And State Farm's allegations that the roof was "damaged by uncovered circumstances," (Docket Entry No. 12 at 13), are, as noted above, conclusory and not competent summary judgment evidence, *see Forsyth*, 19 F.3d at 1533.

Because State Farm does not sufficiently support its assertion of alternative causes of the Encalades' losses, the appraisers' determination of causation was limited to separating damage due to a covered event from the pre-existing condition of the property. This was within the appraisers' authority. *Johnson*, 290 S.W.3d at 892–93. State Farm presents no other objections

to the validity of the appraisal award. (*See* Docket Entry No. 12). As a result, the court grants the Encalades' motion "with respect to [their] request for declaratory relief as to the binding effect of the Appraisal Award signed by the Umpire," *Great Am. Ins. Co. of New York v. Midland Chin Baptist Church, Inc.*, 2021 WL 9860723, at *5 (W.D. Tex. Nov. 21, 2021), because "an enforceable appraisal award, like the one issued in this case, is binding on the parties with respect to that amount," *Ortiz v. State Farm Lloyds*, 589 S.W.3d 127, 132 (Tex. 2019).

Still, this conclusion does not entitle the Encalades to summary judgment on their contract claim. "Failure to pay an appraisal award, by itself, does not entitle the plaintiff to judgment or establish a breach of contract." *Salinas v. Lloyds*, 2023 WL 9007291, at *3 (S.D. Tex. Dec. 28, 2023). Here, the Encalades do not argue the elements of a breach claim. Instead, they state that, if the appraisal award is binding, they are entitled to judgment on their breach claim. This is insufficient. Though appraisal and breach issues are closely related, an "appraisal award by itself does not determine the merits of [the Encalades'] breach-of-contract claim[] or entitle [them] to judgment on th[at] claim[]." *Waloon*, 384 S.W.3d at 906–07. At this stage of the case, the Encalades have not shown that State Farm breached the insurance agreement by withholding payment until this court resolved issues of causation. The Encalades do not argue that the insurance agreement required payment within a certain date. Nor do they argue that State Farm breached the agreement by delaying payment for an unreasonable period. The Encalades are not entitled to summary judgment on their breach of contract claim.

The Encalades' request for declaratory judgment is granted; the appraisal award is binding on the parties. The Encalades' request for summary judgment is denied; they did not establish each essential element of a breach claim.

11

### B.     The Texas Prompt Payment of Claims Act

The Encalades allege that State Farm violated the Texas Prompt Payment of Claims Act by failing to timely pay for the storm damages. To recover under this statute, "an insured must establish: (1) a claim under an insurance policy; (2) that the insurer is liable for the claim; and (3) that the insurer has failed to comply with one of the requirements of [the statute] with respect to the claim." *Evergreen Nat'l Indem. Co. v. Tan It All, Inc.*, 111 S.W.3d 669, 678 (Tex. App.—Austin 2003, no pet.). Under Section 542.058 of the statute, an insurer is liable for statutory damages if, after receiving all the necessary items, statements, and forms required under § 542.055, "it delays payments of the claim for a period exceeding the period specified by other applicable statutes or, if other statutes do not specify a period, for more than sixty days." *Lee v. Catlin Specialty Ins. Co.*, 766 F. Supp. 2d 812, 826 (S.D. Tex. 2011) (citing TEX. INS. CODE § 542.058(a)). "By requiring insurers to promptly satisfy claims that they owe in their entirety, the Legislature incentivizes insurers to resolve disputes and invoke the appraisal process sooner rather than later." *Hinojos v. State Farm Lloyds*, 619 S.W.3d 651, 658 (Tex. 2021). "A significant delay in requesting an appraisal" or in paying the amount determined by appraisal, "may cause additional interest to accrue." *Id.* If the Encalades are correct that State Farm is liable for the appraisal amounts, "those amounts are untimely as a matter of law, warranting penalty interest under Tex. Ins. Code § 542.060." *Tex. Friends Chabad-Lubavitch, Inc. v. Nova Cas. Co.*, 539 F. Supp. 3d 669, 681 (S.D. Tex. 2021).

The outstanding element on this motion is liability. The TCCPA claim is intertwined with the breach claim. An appraisal award is not a determination of liability. *Johnson*, 290 S.W.3d at 890. Because the Encalades have not established that they are entitled to summary judgment on their breach claim, they are not entitled to summary judgment on their TPPCA claim. The

12

Encalades' motion for summary judgment on their claim under the Texas Prompt Payment of Claims Act is denied.

### C. Bad Faith

The Encalades allege that State Farm acted in bad faith, violating the Deceptive Trade Practices Act and breaching the duty of good faith and fair dealing, by failing to account for and investigate the appraisal award's binding effect.

"There is a common law duty of good faith and fair dealing (for 'denying or delaying payment of a claim if the insurer knew or should have known it was reasonably clear the claim was covered,' which includes the insurer's obligation to conduct an adequate investigation of the claim), as well as a statutory one under the Texas Insurance Code § 541.060(a)(2) (an insurer commits an unfair or deceptive act when it 'fail[s] to effectuate a prompt, fair, and equitable settlement' of a claim for which its liability 'has become reasonably clear') or § 541.060(a)(7) (where it fails to reasonably investigate a claim in order to determine whether its liability is reasonably clear)." *United Neurology, P.A. v. Hartford Lloyd's Ins. Co.,* 101 F. Supp. 3d 584, 593 (S.D. Tex.) (footnote omitted), *aff'd*, 624 F. App'x 225 (5th Cir. 2015). "[T]he standard for bad faith is the same under section 541 as that for common law bad faith." *Id.* at 609.

"A cause of action for breach of the duty of good faith and fair dealing exists when the insurer has *no reasonable basis* for denying or delaying payment of a claim or when the insurer fails to determine or delays in determining whether there is any reasonable basis for denial." *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 459 (5th Cir. 1997). "The insured must prove that there were no facts before the insurer which, if believed, would justify denial of the claim." *Id.* "A bona fide controversy is sufficient reason for failure of an insurer to make a prompt payment of a loss claim." *Id.*

"An insured's claim for breach of an insurance contract is 'distinct' and 'independent' from claims that the insurer violated its extra-contractual common-law and statutory duties." *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 489 (Tex. 2018). "A claim for breach of the policy is a 'contract cause of action,' while a common-law or statutory bad-faith claim 'is a cause of action that sounds in tort.'" *Id.* (quoting *Twin City Fire Ins. Co. v. Davis*, 904 S.W.2d 663, 666 (Tex. 1995)). A plaintiff "may still recover damages for a statutory violation that caused an injury 'independent from the loss of the benefits.'" *Ahmad v. Allstate Fire & Cas. Ins. Co.*, No. 4:18-CV-4411, 2021 WL 1429523, at *5 (S.D. Tex. Feb. 28, 2021) (quoting *Ortiz*, 589 S.W.3d at 134), *report and recommendation adopted*, No. 4:18-CV-4411, 2021 WL 1428491 (S.D. Tex. Mar. 24, 2021). But "[t]here can be no recovery for extra-contractual damages for mishandling claims unless the complained of actions or omissions caused injury independent of those that would have resulted from a wrongful denial of policy benefits." *Parkans Intern. LLC v. Zurich Ins. Co.*, 299 F.3d 514, 519 (5th Cir. 2002). Successful independent-injury claims for acting in bad faith are rare. *See Ahmad*, 2021 WL 1429523, at *6 ("As the Texas Supreme Court recognized, 'a successful independent-injury claim would be rare, and we in fact have yet to encounter one.'" (quoting *Menchaca*, 545 S.W.3d at 500)).

State Farm treats the Encalades' bad-faith claim as contingent on a finding of breach of contract and contends that, because the court should not grant summary judgment on the contract claim, the bad faith claim must be irrelevant. (Docket Entry No. 12 at 6). Because bad faith is an independent injury, this is not wholly correct: "Regardless of whether an insured is entitled to benefits under the policy, he may recover damages for a statutory violation that causes an injury 'independent from the loss of the benefits.'" *Ortiz*, 589 S.W.3d at 134 (quoting *Menchaca*, 545 S.W.3d at 499–500). "There can be no recovery for extra-contractual damages for mishandling

14

claims unless the complained of actions or omissions caused injury independent of those that would have resulted from a wrongful denial of policy benefits." *Parkans Intern.*, 299 F.3d at 519.

But the Encalades allege no such injury. "Like in *Ortiz*, the [Encalades] only seek damages for their alleged wrongful loss of benefits under their policy and did not present evidence that they suffered an independent injury that would entitle them to damages in excess of their policy." *Navarra v. State Farm Lloyds*, 2024 WL 3174505, at *2 (5th Cir. June 25, 2024) (per curiam). The Encalades argue that State Farm conducted an "improper investigation" and that its interpretation of the appraisal award was "actionable misrepresentation." But neither of these alleged actions are "injur[ies] independent of those that would have resulted from a wrongful denial of policy benefits." *Parkans Intern.*, 299 F.3d at 519. As a result, the Encalades do not make a sufficient case for bad-faith damages, particularly one with no material facts in dispute. *See Celotex Corp.*, 477 U.S. at 322.

The Encalades' motion for summary judgment on their bad faith and DTPA claim is denied.

## IV. Conclusion

The Encalades' motion for declaratory judgment is granted; the appraisal award is binding on the parties. Their motion for summary judgment on their breach-of-contract claim is denied. Their motion for summary judgment on their bad faith and DTPA claim is denied. Their motion for summary judgment on their claim under the Texas Prompt Payment of Claims Act is denied.

SIGNED on December 29, 2025, at Houston, Texas.

_____
Lee H. Rosenthal
Senior United States District Judge